*Northern District*

No. 6657

## DAVIS H. FOGG

v.

## JOSEPH J. ALESSANDRONI

Argued: April 20, 1968    Decided: July 22, 1968

*Present:* Brooks, P. J., Yesley, Durkin, J. J.

Case tried to *Parker, J.* in the Second District Court of Eastern Middlesex No. 4574.

*Yesley, J. This is an action in two counts* stated to be for the same cause. *Count 1 is for money had and received in the amount of $874.38. Count 2 alleges that the defendant accepted the plaintiff's mother, Anna W. Fogg, as a patient at the Waltham Nursing Home,* owned by the defendant, under the provisions of the Medical Assistance to the Aged (M.A.A.) program, so-called, that pursuant thereto the defendant contracted with the Welfare Board of the City of Waltham to furnish medical care to Mrs. Fogg (the patient), that he represented to the plaintiff that "he (the plaintiff) must pay additional sums of money in order for the defendant to provide medical care to the aforesaid patient, that in consideration of and in reliance upon such representations the plaintiff paid the defendant" certain sums "totaling

$875.00'' over the period from August 10, 1965 to June 30, 1966, and that the aforesaid representations constituted a fraud on the plaintiff. The defendant answered by way of a general denial and set up the affirmative defenses of payment and illegality of the contract. There was a finding for the defendant on each count.

*At the trial there was evidence that* in July of 1965 the patient, then 96 years of age, was in a nursing home in Waltham, that the plaintiff spoke to the defendant about placing the patient in the defendant's nursing home, that the defendant at first refused to accept her but at some point stated that he would take her into his nursing home "if the plaintiff would pay $27.53 per week in addition to the Welfare payments made by the City of Waltham, so that the total charge of $81.50 per week for the patient's care would be paid", that an application for admission of the patient was signed by the plaintiff, that over his signature there was a printed clause whereby he expressly agreed to pay to the Waltham Nursing Home the sum of $27.53 per week for the patient's maintenance and care.

In answer to a Notice to Admit Facts, the defendant admitted that on August 10, 1965 the patient entered his nursing home, that from August 10, 1965 until July 1, 1966 he received periodic payments from the Welfare Board of the City of Waltham for nursing home care furnished the patient, that in addition: from

August 10, 1965 until January 4, 1966 the defendant received from the plaintiff weekly payments of $27.53 for care of the patient at his nursing home and thereafter weekly payments of $11.85, reflecting a change in accommodations, until July 1, 1966, on which date the defendant sold the nursing home. This action was entered in December of 1966.

The plaintiff testified that these weekly payments by him were voluntary, that he reported them to the Waltham Welfare Department on a Relative Contribution Report form, as a result of which "a Welfare payment to the defendant was held up in January, 1966, pending a conference between the defendant and the Director of the Welfare Department. . .(that) at the conference the defendant agreed to take up the matter of the excess payments with the plaintiff", and that the Welfare payments thereupon were resumed. The parties never did discuss the "excess payments" after that conference.

The case comes here on a report of the trial justice's disposition of plaintiff's requests for rulings numbered 3, 5, 9, and 10. The issue presented by this appeal is whether, as contended by the plaintiff, a finding for the plaintiff was required. The plaintiff argues that he is entitled to recover the payments made by him to the defendant on the grounds: (1) that a nursing home furnishing services to a person on M. A. A. may not legally accept payments therefor from any source other than the local

Welfare Department, and (2) that the defendant must be found as a matter of law to have practiced deceit upon the plaintiff.

On his first point, the plaintiff concedes in his brief that there exists no statutory prohibition against the receipt by a person providing nursing home services to a welfare patient of payments therefor from a private party in addition to those received from the local welfare board. He confesses no success in finding any case law to support his theory. He argues, nevertheless, that "the conclusion is inescapable that, if not illegal, such a situation cannot be tolerated on grounds of public policy."

The provisions for "medical assistance for the aged" are found in § 13-32 of chapter 118A of the General Laws inserted by St. 1960, c. 781. "Medical assistance for the aged" is defined as "payment of part or all of the cost of . . . . (3) nursing home services". (§ 13(e) (3)). In § 14 it is provided that:

> "The board of welfare of each town shall furnish medical assistance for the aged to each person sixty-five years of age or over who resides therein and whose income and resources are insufficient to meet the cost of necessary medical services. Payment shall be made to the institution supplying medical services."

The rate to be paid nursing homes is established under G.L. c. 7, § 30L by a board of rate setting. In a practical sense, the local board

provides nursing home care to the aid recipient by "purchasing" it from the nursing home, and G.L. c. 7, § 30L limits the obligation of the local welfare board to making payments at the rate set by the board of rate setting, — to paraphrase the opinion of the court in *Springfield Hospital* v. *Commissioner of Public Welfare,* 350 Mass. 704, 708, which involved hospital rates. The thrust of this body of statutory law appears to be to provide a mechanism for the establishment of "adequate and reasonable rates" to be paid by local welfare boards to nursing homes (G.L. c. 7, § 30L) and to limit the liability of the local welfare boards to such rates. See *Springfield Hospital* v. *Commissioner of Public Welfare,* supra, page 708.

We fail to find any suggestion in the cited statutes of a public policy which would prevent a nursing home from openly accepting amounts from a third party to supplement those paid by the local welfare board. The fact of the continuation of payments by the Waltham Welfare Board after being informed of the arrangement here made would seem to contradict the existence of any such public policy.

Plaintiff's theory of deceit as a ground for recovery is without merit. The basis for such theory is that the plaintiff paid the additional sums to the defendant "in reliance upon the representation of the defendant" that he would not furnish nursing home care to the patient unless such sums were paid in addition to the

amounts received by him from the Waltham Welfare Board. It is difficult to cull from this any attempt to deceive, or any fraud. The trial justice specially found that no false statement was made by the defendant. In the absence of a contract contravening public policy or a finding of fraud perpetrated by the defendant on the plaintiff, it would have been gross error for the trial justice to have granted requests numbered 9 and 10 that a finding was required for the plaintiff on counts 1 and 2. The remaining requests in contention, numbered 3 and 5, would require the court to find fraud "in law". As above stated, this would have been error. We find the court's disposition of the requests free of error. **The report is to be dismissed.**

CHARLES BURGESS,
    for plaintiff
MEYER H. GOLDMAN,
    for defendant.